I often focus on the e-mails, and I can see that there could be someone ambiguous, but the district court made a factual finding, and I think the standard of review is a difficult one for your client at this point. But even with, if we take out the e-mails, wasn't there enough factual basis for the court to make the determination that it is based on the supervisory role? Because it looks like there's some evidence that the district court found based on the fact that Newman tracked the package and then personally drove Mr. Heim to pick up the package. That is true, those are the facts as to what happened, but there was an expert who testified that the boss rarely would be the one to pick up the package. They're more or less shielded by their lower minions, and the fact that Mr. Newman went with him to pick up the package, and or tracked the package himself, because it was on, I believe, Mr. Newman's girlfriend's computer. But couldn't it be also, though, evident, I understand that it could support that, but it also could support that he exercised authority over Mr. Newman by having him do what he did. It could be viewed that way, but wouldn't it be peculiar that of all the plethora of joint transactions, shipments and whatnot that came down before, Mr. Newman had no part of it, and then all of a sudden on August 1st, which was not disputed, I believe that that wasn't even brought up at sentencing, that it wasn't him that tracked it, so I can't go there, but the fact that on August 3rd these things could also be looked at, and he was the buyer, and he wanted it, and he wanted it now. But isn't that the point? If there are two alternative ways of viewing the evidence, and the district court chose one alternative explanation, how can it be plain error as long as it's a feasible alternative? But that's my argument, Your Honor, and it was counseled below me that the emails, which is the sole sum total of what the government has to attribute all the drugs from the conspiracy other than our narrow first, second, third violence, there's not even a reliable, there is no indication in those emails that the boss who rides, who was in Anchorage, was Newman. Are you saying there's absolutely no rational basis upon which the district court could interpret those emails in the way it did? That's one way of putting it, yes. Unreliable? Yes. I would say the nuance that, I came into this case not knowing anything about it. So did we. Well, what I'm saying is, I decided to read the emails first because it seems to be a that the attribution of relevant conduct to Mr. Newman for the entire conspiracy, it's just, it has no, it has no, there's nothing that I read that showed me a rational basis that this, these emails pointed to Mr. Newman solely because the only context that he can be seen in, and the whole thing from March, April, is August 1st when the package was tracked on a computer in his home, maybe his email, I'm not sure. I know you go to USPS.com and you can track. So that was done on a computer in his house, and B, he went with him to pick it up. Did you want to save some time for a phone? Sure. All right, we'll hear from the governor. Good morning. Good morning, I'm Stephen Cooper, court of the United States. I plead the court. The standard of review is highly deferential at this stage. Even under the highly deferential standard, I'm having a little trouble, based on this record, connecting Mr. Newman to the references of the loss. Can you point to me somewhere in the record that clearly indicates that? That points to Mr. Newman as the boss? Right. There's no one thing in particular, but there are a series of things in combination. Why don't you list at least three for me? Well, first of all, Mr. Heim was the sole addressee, and he immediately shared this highly valuable, at least $40,000 worth of drugs with one and only person in secret, in hiding, and that was Mr. Newman. And they did that shortly after they had checked the progress of this package on the postal tracking system by a computer from Mr. Newman's house, using the number for tracking it, which had been emailed to Mr. Heim. And then immediately after that, over to the house. This all happened the same day, August 2nd, over to Heim's mother's house to pick it up and then go secretly to the woods together. And this all fits exactly the pattern of a person who is in a subordinate position, shielding the identity of the person. Well, doesn't it also fit the pattern of the opposite? Of Mr. Heim maybe being, you know, the one directing Mr. Newman? There were references in the emails to a number of other individuals, persons or would-be other persons. I'm just trying to figure out how we know this person is in fact Mr. Newman, the boss. One of the best ways is to look at the emails. I understood the court's question in reference to what's outside of the emails. But one of the best ways to find that connection is to join the emails with the other evidence rather than segregating. And one particular way to do that is to look at the emails of July the 19th. This was pointed out on page 18 of Newman's opening brief. A July 19th email is highly significant because it mentions that Heim has someone he calls his mech. Now notice the thing that he does with his mech. He discusses with him the quality of the drugs. First of all, he says, I just talked to my mech. It plugs from the first time, meaning the drugs from the first time were good. And then he goes on to describe how the quality has gone downhill since then and we're concerned about it. We want to suggest how you can handle these drugs differently to improve their what he called shelf life and try to keep up the charade that these are spark plugs instead of drugs as we know. Well, now his mech is somebody that had experience with a previous, at least one previous delivery with him. And then he goes on in the same email of July 19th and he says, my mech, the more drugs you send, the harder my mech will work. And he does his own collections. Now this mech, we know, was Mr. Newman because when the box came, this is the one and only person in hiding with whom he shared the contents instantly after he picked it up. So this is what his own email of July 19th does. It identifies Newman and identifies his role. He is familiar with previous deliveries, concerned about the quality. He's the one who takes the drugs and sells them and he's solely responsible for the money. All that's within that email. I guess what you just described, I guess I read that differently. I don't see it being tied to Mr. Newman because the number of other references to what appeared to be other persons involved in this conspiracy. I'm curious, did Mr. Hine plead guilty? Yes, I do. And what was his sentence? I think he got a 10-year sentence. And did he receive a role enhancement? I do not believe so. And so your best argument with respect to the fact that Mr. Newman is the boss is this email of July 19th. I would say I would not isolate it to that. That is strong, but it obtains its strength by combination with the other factors that were mentioned. Let's just assume, perhaps, that we find that the emails are too tenuous. Is there anything else that you would point us to beyond the emails that would support the two-level enhancement? Well, again, it's a combination of the factors that, first of all, this was not, I don't think there was any dispute that this was a classic technique that is commonly used in drug trafficking to have someone stand out front and be the one whose address is used and even his name. And that puts all the risk upon him, but the purpose and effect is to protect the person who is primarily involved and make someone who is in a subordinate position assume that role of taking the risk of being identified. Now, that is a technique that even the defense does not disagree with. It was mentioned on DR page 45 by Mr. Newman's trial counsel saying, well, when they talk about that technique being used by the Hells Angels, they're not saying anything more than that the Hells Angels act like any other drug trafficker does. In other words, they're accepting the fact that that technique is commonly used and that that was used in this case. And that puts Mr. Newman in the superior position. I'm in the subservient position of running the risk of being connected with the drugs and sitting there trying to say, well, it was just me, not the other guy. That's his job as being the nominee addressee. Now, that's not standing alone in itself because as Judge Beislein pointed out, and he did point this out, there was a similarity between what was done with regard to the last delivery and what was described at the very beginning by Mr. Heim, that he had a boss, that his boss was in charge of the money, that he would have money when the boss appeared. And that was the same thing if you look at the July 19th email that happened on that day. He said, my boss, my partner, my man, he called him at that point, does his own collections. So again, he's distancing himself from the handling of the money and yet being the addressee of the parcel. And another extremely important factor in Judge Beislein's evaluation was the reaction that the defendant, Heim, or Newman rather, showed when it was suggested that Heim should have taken the stand and testified. He could have exonerated him. The girlfriend said, although his answer was angrily, he couldn't. It would only have made matters worse. There's no way it could have made matters worse than he already was facing having his hands in the box, the package at the time being caught in that position. The only way to make it worse would be by saying something that might tie him to the rest of the other transactions. And that was Mr. Newman's only logical basis for being afraid. Let me ask you about what's your, I guess, position on when the conspiracy began? I mean, what's the date that the conspiracy began? I believe that would have been April of 2013. I'd have to check the way the indictment stated it, but that was the first. And what's the evidence in the record showing that? And that's coming from the email traffic that there was an 8-ounce deal made at the end of April. There was a 4-ounce deal made and they recognized that they owed money on the previous 4 ounces that were provided in April and hadn't paid it. And the email traffic showed that the boss was determined that he was going to pay for that first 4 ounces by the profits from the second 4 ounces. That's exactly the way it was put in the emails in April. So that would have been the beginning of the conspiracy. It also would have itemized the 8 ounces that occurred in April. And May was a separate 4 ounces at the end of May on page 61 of the exception record. I guess my time is up. Sorry. You may finish your answer. On the 31st of May there was a $5,000 payment which we corroborated by producing the deposit receipt for that. On page 61 of the excerpts of record it shows that the person he sent it to didn't even provide Mr. Heim's bank account number to send it to until that day, May 31st. That shows up on page 61 of the excerpts of record. And then we corroborated the June payments as well with postal records. I guess I'm just trying to figure out, is that date applicable to Mr. Newman only if we find that he's the boss? I believe that that would be true, yes. That's correct. If we find that he's not the boss, or we make a determination that he's not the boss, or there's not enough evidence supporting that he is the boss, then the time is effective. Sorry? The time would be effective. The length of time of the conspiracy and the drug quantity and all would be effective. That's correct. I think, though, that if there is any plausible view of the comprehensive view that the district judge took, even if this court is convinced that it would have decided otherwise, it really has to go with the finding of the district court on their review. Thank you. Thank you very much. Thank you, counsel. So if I understood that correctly, Your Honors, the fact that Mr. Newman was driving the vehicle when they picked up the drug package and they went to the secret place means he was the boss this one time. He went and did it no other time. It also could be viewed that he was greedy for his map for whatever reason. Use it, sell it, I'm not sure. And the reference to Mr. Newman maybe being the mech is kind of refuted if you look at the e-mails on April 29th, 2013, and then April 30th, the first one on April 30th. And he's talking about my old boss and something I'm not going to use him. My boss, the one that rides, had issues with money, and he's apologetic. He's going to get it to you. But then the very next e-mail says at the bottom of that one, continue on next e-mail. He told me our go-to mechanic. Mr. Newman can't be both a mech, like Mr. Cooper suggests, and a boss. And I submit to Your Honors that why not? Because they're two different roles? What in the record supports the position that they are two different roles? I would have to probably sort through it a little bit with a more finer tune, but I'd be happy to submit a paper doing that, if Your Honors. But you made the statement, so I was supposing that there was something in the record that supported the statement. Because the mechanic, it seemed to be more of a seller? Did the expert testify as to what that meant? I'm sorry? Was there expert testimony as to the different roles? Only in the respect that the boss normally does not come out of hiding. He's more secluded. He's trying to protect. It was very strange that Newman, as a boss, went to, if one found he was a boss, which I say is implausible, then you went to this one deal to pick it up. The expert testified that the boss would stay in the background. And again, it would be very strange that all of a sudden, on this one thing, Newman, the boss, so Heim said, or the government says, I'm not even sure how Heim would get it, but that Newman would go with him just on this one simple occasion. Actually, Your Honors, on paragraph 52 of the pre-session report, there's a statement by the PSR author that says Heim bought the drugs for Newman. Paragraph 52, it's something like, it's clear that Heim purchased drugs for Newman. That's what he did on August 3rd. Heim purchased the drugs for a buyer named Newman. All right, thank you, counsel. Thank you to both counsel.
judges: Schroeder, Rawlinson, Murguia